United States District Court
Southern District of Texas
**ENTERED**
March 29, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| ADRIANNA MORALES, *et al.*, § | |
| § | |
| Plaintiffs, § | |
| V. § | CIVIL ACTION NO. 2:19-CV-00094 |
| § | |
| OK TRANS, INC., *et al.*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Before the Court is Plaintiffs' motion for partial summary judgment regarding statutory employment. (D.E. 175). Defendant Liberty Lane, LLC ("Liberty Lane") is opposed to the motion. *See* (D.E. 204, p. 1). For the reasons below, the Court **GRANTS** Plaintiffs' motion. (D.E. 175).

### I. Background

The facts of this case are straightforward and were recounted in the Court's order denying Penske's motion for summary judgment. *See* (D.E. 123). On or about December 26, 2018, in Bee County, Texas, Satnam Singh Lehal was driving a tractor-trailer owned and operated by OK Trans, Inc. *See* (D.E. 223, p. 10). At some point, the tractor-trailer jackknifed, crossed into the oncoming lane, and collided with a pick-up truck driven by Lyndon Dean Meyer, who died on impact. *See id.* at 10–11.

Relevant to the instant motion, Plaintiffs argue that Liberty Lane is vicariously liable for Lehal's negligence as his "statutory employer" because Liberty Lane acted as a motor carrier for Penske Transportation Management ("PTM") using a vehicle it did not own, driven by a driver it did not regularly employ, to provide interstate transportation. (D.E. 175, p. 28).

### II. Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law[.]" *Id.* In determining whether a judgment as a matter of law is appropriate, the court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. The "court must view the evidence 'in the light most favorable to the [nonmovant].'" *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam) (first quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); and then citing *Anderson*, 477 U.S. at 255). A court is not required to search the record for evidence supporting a party's opposition to summary judgment. *Stults v. Conoco, Inc.*, 76 F.3d 651, 657 (5th Cir. 1996); *see also Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

The movant bears the "initial responsibility" to present evidence proving that no genuine dispute of material fact exists, but the movant does not have to present supporting evidence "negating the opponent's claim." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (emphasis omitted). If the movant "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam). If the movant meets this burden, then the burden shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Id.* (citing *Celotex Corp.*, 477 U.S. at 325). The nonmoving party "must identify specific evidence in the summary judgment record" and demonstrate how that evidence supports their claim. *See Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007) (internal quotations and citations omitted). The nonmoving party's burden cannot be satisfied by "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337,

343 (5th Cir. 2007) (internal quotations and citation omitted). If the nonmovant fails to meet this burden, then the movant is entitled to summary judgment. *Little*, 37 F.3d at 1076.

### III. Discussion

Plaintiffs seek to impose vicarious liability on Liberty Lane because Liberty Lane was the "statutory employer" of Lehal. *See* (D.E. 175, p. 28). As such, the Court must determine whether there is a genuine dispute of material fact as to whether Liberty Lane was Lehal's statutory employer, and if so, whether it is vicariously liable for Lehal's alleged negligence as a result.

#### A. The Statutory Employer Doctrine

There are two theories of statutory employment relevant to the instant motion. One derives from 49 C.F.R. § 390.5's definitions of "employer" and "employee[,]" and the other derives from the "responsibility and control" regulations in 49 C.F.R. §§ 376.11–.12. *See McKeown v. Rahim*, 446 F. Supp. 3d 69, 77–78 (W.D. Va. 2020) (Dillon, J.) (first citing *Beavers v. Victorian*, 38 F. Supp. 3d 1260, 1269–71 (W.D. Okla. 2014) (DeGiusti, J.); and then citing *White v. Date Trucking, LLC*, No. ELH-17-1177, 2018 WL 2462921 (D. Md. June 1, 2018) (Hollander, J.)).

Plaintiffs rely on the "responsibility and control" theory. *See* (D.E. 175, p. 7). Under the responsibility and control theory, an entity is a statutory employer if four conditions are met:

> (1) the entity is a motor carrier and not a broker;
>
> (2) it does not own the vehicle involved in the incident;
>
> (3) it is using the vehicle in interstate commerce; and
>
> (4) it does not employ the driver.

*See Sentry Select Ins. Co. v. Drought Transp., LLC*, No. 15-cv-890, 2017 WL 5382168, at *2 (W.D. Tex. May 3, 2017) (Lamberth, J.); *Sharpless v. Sim*, 209 S.W.3d 825, 829 (Tex. App.—Dallas 2006, pet. denied)); *McKeown v. Rahim*, 446 F. Supp. 3d 69, 78–79 (W.D. Va. 2020) (Dillon, J.).

After viewing all the evidence in the light most favorable to Liberty Lane, the Court finds there is no genuine dispute of material fact that Liberty Lane is Lehal's statutory employer.

*i. Liberty Lane acted as a motor carrier and not as a broker.*

First, Liberty Lane acted as a motor carrier and not as a broker for the shipment at issue ("the Shipment"). A motor carrier is an entity that "provid[es] motor vehicle transportation for compensation." *See* 49 U.S.C. § 13102(14).[1] And a broker is an entity "other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." *Id.* § 13102(2).

"Motor carriers . . . are not brokers . . . when they arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to transport." 49 C.F.R. § 371.2(a) (2022). While entities may have authorization to act as both a motor carrier and broker, *see* 49 U.S.C. § 13904(d)(1), they cannot act both as a broker and a motor carrier on the same shipment, *see* 49 C.F.R. § 371.2(a), (c); *Tryg Ins. v. C.H. Robinson Worldwide, Inc.*, 767 F. App'x 284, 286–87 (3d Cir. 2019) (discussing the

---

[1] According to § 13102,

> [t]he term 'transportation' includes–
> (A) a motor vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, regardless of ownership or an agreement concerning use; and
>
> (B) services related to that movement, including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property.

*Id.* § 13102(23).

statutory differences between motor carriers and brokers).[2] As such, when an entity has both motor carrier and broker authority, a court must determine which proverbial hat an entity wore on the particular shipment giving rise to the claims against it. *See* 49 C.F.R. § 371.2(a) (discussing functional distinction between motor carriers and brokers); *Hernandez v. Union Pac. R.R. Co.*, No. EP-17-CV-00007, 2018 WL 4169328, at *4–5 (W.D. Tex. June 13, 2018) (Montalvo, J.) (determining whether an entity was a motor carrier for a given shipment); *Schramm v. Foster*, 341 F. Supp. 2d 536, 549 (D. Md. 2004) (Motz, J.) (same). "The difference between a carrier and a broker is often blurry." *DaBecca Nat. Foods, Inc. v. RD Trucking, LLC*, No. 14-C-6100, 2015 WL 2444505, at *4 (N.D. Ill. May 20, 2015) (Gottschall, J.) (quoting *Neb. Turkey Growers Coop. Ass'n. v. ATS Logistics Servs., Inc.*, No. 4:05-CV-3060, 2005 WL 3118008, at *4 (D. Neb. Nov. 22, 2005) (Kopf, J.)). "Whether a company is a broker or a carrier is not determined by what the company labels itself, but by how it represents itself to the world and its relationship to the shipper." *Hewlett-Packard Co. v. Brother's Trucking Enters., Inc.*, 373 F. Supp. 2d 1349, 1351 (S.D. Fla. 2005) (Cooke, J.) (citations omitted) (analyzing the issue in a different context).

Viewing all the evidence in the light most favorable to Liberty Lane, there is no fact dispute that Liberty Lane acted as a motor carrier. At the outset, Liberty Lane is only authorized to act as a motor carrier—not as a broker. (D.E. 175-14, p. 6) (containing deposition testimony of Liberty Lane's former manager noting that Liberty Lane does not have any operating authority other than to act as a motor carrier); *id.* at 24 (containing testimony establishing that Liberty Lane does not have authority to act as a transportation broker). And even if Liberty Lane was authorized to act

---

[2] "Motor carrier" and "broker" status under the applicable federal regulations are mutually exclusive. A broker "arranges, or offers to arrange, the transportation of property by an authorized motor carrier." 49 C.F.R. § 371.2(a). Conversely, a motor carrier may perform that exact same function ***but is not considered a broker*** if "they have accepted and legally bound themselves to transport" a particular shipment. *See id.*

as a broker, no reasonable jury could find that it did so here. As discussed above, a motor carrier which performs the function of a broker by arranging or offering to arrange "the transportation of property by an authorized motor carrier" is not considered a broker if it accepts and legally binds itself to transport a particular shipment. *Supra* section III.A.i.n.2; *see also* 49 C.F.R. § 371.2(a). The undisputed evidence shows that Liberty Lane explicitly agreed to "accept and transport" commodities that Defendant PTM tendered to it, (D.E. 175-7, p. 2) (Motor Carrier Agreement ("MCA") between PTM and Liberty Lane), and that the shipment in this case was originally tendered to Liberty Lane by PTM under the MCA, *see* (D.E. 175-15, p. 61–62) (noting that PTM tendered the Shipment to Liberty Lane for transport and that Liberty Lane accepted the tender). Of course, Liberty Lane did not transport the Shipment in its own name because its sister company, Liberty Commercial, sub-brokered the load to OK Trans. *See id.*; (D.E. 98, p. 4; D.E. 110, p. 4–5). But Liberty Commercial, *not* Liberty Lane acted as the sub-broker. *See* (D.E. 204, p. 4). Thus, Liberty Lane acted solely as a motor carrier and not as a broker in this case.[3]

> *ii. Liberty Lane did not own the vehicle at issue.*

Second, it is uncontested that Liberty Lane did not use its own truck to transport the Shipment. *See* (D.E. 175, p. 17; D.E. 175-14, p. 18); (D.E. 204, p. 3) (noting that Liberty Lane did not own the vehicle that transported the Shipment). As such, this condition is satisfied.

> *iii. Liberty Lane used the vehicle in interstate commerce.*

Third, there is no dispute that the vehicle traveled in interstate commerce—Lehal was to

---

[3] While the issue of whether a company is a broker or a carrier is "often not well-suited for summary judgment," (D.E. 123, p. 6) (citing *Nipponkoa Ins. Co. v. C.H. Robinson Worldwide, Inc.*, No. 09-Civ.-2365, 2011 WL 671747, at *5 (S.D.N.Y. Feb. 18, 2011) (Gardephe, J.), Liberty Lane fails to offer any evidence that it was authorized to act as a broker. Liberty Lane also fails to contravene Plaintiffs' evidence that it agreed to act as a carrier for the shipment at issue via the MCA. In fact, in Liberty Lane's one-sentence argument that it acted as a broker, it admits that Liberty Commercial, and not Liberty Lane, sub-brokered the load to OK Trans. *See* (D.E. 204, p. 4).

drive the Shipment from Texas to California. *See* (D.E. 175, p. 17; D.E. 204-3, p. 9). Thus, the Court must determine whether Liberty Lane "used" the vehicle owned by OK Trans and driven by Lehal. The parties do not dispute that Liberty Lane agreed to transport the load via its agreement with PTM. *See* (D.E. 204, p. 3). The parties also agree that Liberty Lane did not use its own truck or driver to transport the shipment, *see supra* section III.A.*ii*—rather, Liberty Lane's sister company Liberty Commercial engaged OK Trans to transport the shipment, (D.E. 175, p. 4; D.E. 204, p. 4). Thus, the evidence shows that Liberty Lane, acting as a motor carrier, fulfilled its obligation to transport the shipment by arranging for its sister company to sub-broker the load to OK Trans. *See* (D.E. 175, p. 4; D.E. 204, p. 4). In other words, Liberty Lane *used* OK Trans's truck and driver to transport the shipment on behalf of Penske, via its *arrangement* with OK Trans. *See Puga v. About Tyme Transp., Inc.*, 227 F. Supp. 3d 760, 764 (S.D. Tex. 2017) (Ramos, J.).

Plaintiffs focus their argument on whether Liberty Lane had "possession" of the vehicle at the time of the crash. *See* (D.E. 175, p. 21–27). Applying the "responsibility and control" regulations, Plaintiffs argue that Liberty Lane was required to have a written lease with OK Trans providing that Liberty Lane would have control and responsibility for the vehicle from the time Liberty Lane took possession until it returned the vehicle to OK Trans. *See id.* at 21. Plaintiffs admit, however, that there was no written lease between Liberty Lane and OK Trans, and that no employee of Liberty Lane ever took actual physical possession of the vehicle. *See id.* at 21–27. Nonetheless, Plaintiffs cite Ninth Circuit caselaw holding that no written lease is necessary—an oral arrangement will suffice. *Id.* at 22–23 (citing *Zamalloa v. Hart*, 31 F.3d 911, 917–18 (9th Cir. 1994)).

This Court agrees. No lease, whether written or oral, is necessary to trigger a statutory employer relationship. *See Puga*, 227 F. Supp. 3d at 764; *Zamalloa*, 31 F.3d at 918; *see also Jackson v. O'Shields*, 101 F.3d 1083, 1089 (5th Cir. 1996) (recognizing that failure to comply with

the regulatory requirements "does not and should not insulate a [motor carrier] from liability"). Rather, Plaintiffs must show that Liberty Lane *used* OK Trans's vehicle. Although there was no written lease between Liberty Lane and OK Trans, the parties agree that Liberty Lane had an agreement with OK Trans—brokered by Liberty Commercial—that Lehal would drive OK Trans's vehicle on behalf of Liberty Lane to fulfill Liberty Lane's agreement with Penske. Accordingly, the Court finds this condition is satisfied.

*iv. Liberty Lane did not otherwise employ Lehal.*

The parties agree that Liberty Lane did not otherwise employ Lehal. *See* (D.E. 175, p. 2; D.E. 204, p. 2). Accordingly, this condition is satisfied.

*v. Liberty Lane's arguments that it is not a statutory employer are inapposite.*

Notably, Liberty Lane offers only a cursory argument that it is not Lehal's statutory employer. *See* (D.E. 204, p. 4–5). In two paragraphs, Liberty Lane argues that under 49 C.F.R. § 390.5's definitions of "employer" and "employee," it is not Lehal's statutory employer because a motor carrier that engages a second motor carrier to transport a shipment cannot be the statutory employer of the second motor carrier's employee. *See id.* (relying on 49 C.F.R. § 390.5 (2022)).

This is incorrect. At the outset, Liberty Lane fails to recognize that Plaintiffs primarily invoke the "responsibility and control" theory of the statutory employer doctrine and not the theory deriving from § 390.5's definitions of "employee" and "employer." *See* (D.E. 175, p. 6–11). Thus, Liberty Lane's argument arising under § 390.5 has no bearing on whether it is Lehal's statutory employer under the responsibility and control regulations.

Further, by its text, § 390.5 does not mandate that an employee have only a single statutory employer. In fact, it provides only definitions:

> Employee means any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial

> motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle), a mechanic, and a freight handler. . . .
>
> Employer means any person engaged in a business affecting interstate commerce who owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it[.]

49 C.F.R. § 390.5 (emphasis omitted). Liberty Lane cites *Beavers v. Victorian*, 38 F. Supp. 3d 1260, 1270 (W.D. Okla. 2014) (deGiusti, J.), for the proposition that "[u]nder the plain language of [§] 390.5, a registered motor carrier that is an employer of an individual driver cannot be a statutory employee of another registered carrier." (D.E. 204, p. 4 & n.10). But *Beavers* cannot hold Liberty Lane's water. The *Beavers* court determined that the owner/operator of a motor carrier could not be the statutory employee of another motor carrier because § 390.5 defines an employee as an individual. *See* 38 F. Supp. 3d at 1270. But in this case, Plaintiffs do not argue that OK Trans is the statutory employee of Liberty Lane. Rather, Plaintiffs argue that *Lehal*—an individual—is Liberty Lane's statutory employee. *See* (D.E. 175, p. 28). As such, *Beavers* is not persuasive.

Furthermore, Liberty Lane's argument that "[a] motor carrier may not be held liable as a statutory employer when another motor carrier that was contracted to provide transportation service employed the employee driver" also fails. *See* (D.E. 204, p. 4). A driver may have more than one statutory employer. *See Puga*, 227 F. Supp. 3d at 765 (first citing *Zamalloa*, 31 F.3d at 916; and then citing *Simmons v. King*, 478 F.2d 857, 867 (5th Cir. 1973)). Indeed, "the liability of one employer does not insulate another employer from liability." *Id.* (citing *Simmons*, 478 F.2d at 867). As such, whether OK Trans is Lehal's statutory employer has no bearing on whether the same is true for Liberty Lane.

In sum, Plaintiffs have shown as a matter of law that Liberty Lane is Lehal's statutory employer under the responsibility and control regulations.

**B. Liability of a Statutory Employer**

Next, the Court must determine whether Liberty Lane is vicariously liable as Lehal's statutory employer. Plaintiffs argue that the Interstate Commerce Act and the responsibility and control regulations preempt state respondeat superior law such that statutory employers are liable for the acts of their employees. *See* (D.E. 175, p. 9) ("[W]hen a motor carrier uses non-owned equipment to perform interstate transportation, it is liable as a statutory employer[.]" (citation omitted)); (D.E. 210, p. 2) ("The statutory-employer doctrine preempts state respondeat superior law[.]" (citations and italics omitted)). Conversely, Liberty Lane argues that a motor carrier's status under the Motor Carrier Safety Act and the Federal Motor Carrier Safety Regulations ("FMCSR") has no bearing on whether it is vicariously liable under state law. (D.E. 204, p. 5).

Congress amended federal law[4] in 1956 to require motor carriers to assume control of the vehicles they lease. *Price*, 727 F.2d at 496. In relevant part, 49 U.S.C. § 14102 provides:

> (a) General authority of Secretary—The Secretary may require a motor carrier providing transportation subject to jurisdiction under subchapter I of chapter 135 that uses motor vehicles not owned by it to transport property under an arrangement with another party to—
>
> (1) make the arrangement in writing signed by the parties specifying its duration and the compensation to be paid by the motor carrier;
> (2) carry a copy of the arrangement in each motor vehicle to which it applies during the period the arrangement is in effect;
> (3) inspect the motor vehicles and obtain liability and cargo insurance on them; and
> (4) have control of and be responsible for operating those motor vehicles in compliance with requirements prescribed by the Secretary on safety of operations and equipment, and with other applicable law as if the motor vehicles were owned by the motor carrier.

---

[4] Plaintiffs, Liberty Lane, and caselaw refer interchangeably to the Interstate Commerce Act, *see* (D.E. 175, p. 6), the Interstate Common Carrier Act, *see Price v. Westmoreland*, 727 F.2d 494, 496 (5th Cir. 1984), the Motor Carrier Act, *see* (D.E. 210, p. 2); *Puga*, 227 F. Supp. 3d at 764, and the Motor Carrier Safety Act, *see* (D.E. 204, p. 5). All four appear to reference the same statute—currently codified as 49 U.S.C. § 14102(a) and previously codified as 49 U.S.C. § 11107(a)(4). For consistency, the Court will refer to the statute as § 14102(a) from now on.

49 U.S.C. § 14102(a). The intent of the amendments was "to ensure that interstate motor carriers would be fully responsible" for the operation of leased vehicles "and the supervision of drivers, thus protecting the public" from motor carriers who might otherwise attempt to shirk financial responsibility for accidents. *Crocker v. Morales-Santana*, 854 N.W.2d 663, 668 (N.D. 2014) (citation omitted); *see also Simmons*, 478 F.2d at 866–67, 866 n.21. Consistent with the text and purpose of the statute, the Department of Transportation promulgated regulations—referenced throughout this order as the "responsibility and control" regulations—requiring motor carriers who use equipment they do not own to enter into written leases with the entity that owns the equipment. *See* 49 C.F.R. §§ 376.11–.12. The regulations further require that the lease grant the motor carrier "exclusive possession, control, and use of the equipment for the duration of the lease" and that the lease "provide that the authorized carrier lessee shall assume complete operation for the operation of the equipment for the duration of the lease." *Id.* § 376.12(c)(1).

In *Simmons*, and again in *Price*, the Fifth Circuit held that the responsibility and control regulations[5] "preempt state law in tort actions in which a member of the public is injured by the negligence of a motor carrier's employee while operating an interstate carrier vehicle[.]" *Price*, 727 F.2d at 496 (citing *Simmons*, 478 F.2d at 860, 866). Thus, when a motor carrier assumes "exclusive possession, control, and use of the vehicle and responsibility to the public," the driver becomes the motor carrier's statutory employee, and as such the motor carrier is "vicariously liable *as a matter of law* for the negligence of [the driver]." *Id.* (internal quotation marks omitted) (quoting *Simmons*, 478 F.2d at 867).

---

[5] The responsibility and control regulations have changed locations in the Federal Register numerous times—they were originally located at 49 C.F.R. § 207, *see Lease and Interchange of Vehicles*, 16 Fed. Reg. 4804 (May 23, 1951), then 49 C.F.R. § 1057, *see Lease and Interchange of Vehicles*, 33 Fed. Reg. 2847, 2847–49 (Feb. 10, 1968), until they arrived at their present home—49 C.F.R. 376, *see Motor Carrier Transportation; Redesignation of Regulations from the Surface Transportation Board Pursuant to the ICC Termination Act of 1995*, 61 Fed Reg. 54706, 54705–07 (Oct. 21, 1996).

This Court recognizes that the Department of Transportation amended the responsibility and control regulations in 1992, stating:

> Nothing in the provisions required by paragraph (c)(1) of this section is intended to affect whether the lessor or driver provided by the lessor is an independent contractor or an employee of the authorized carrier lessee. An independent contractor relationship may exist when a carrier lessee complies with 49 U.S.C. § 14202 and attendant administrative requirements.

49 C.F.R. § 376.12(c)(4). Following the 1992 amendment, courts split on whether the statutory employer doctrine preempts state tort law and automatically imposes vicarious liability. *McKeown*, 446 F. Supp 3d at 79–80; *see also Edwards v. McElliots Trucking, LLC*, 268 F. Supp. 3d 867, 878 (S.D. W. Va. 2017) (Chambers, C.J.). Three different approaches emerged. *Edwards*, 268 F. Supp. 3d at 878. Some courts keep with the pre-1992 practice of imposing strict vicarious liability on statutory employers. *See, e.g.*, *id.* (referencing *Zamalloa*, 31 F.3d at 917). A second group finds the responsibility and control regulations have no bearing on the liability of statutory employers. *See id.* (referencing *Lohr v. Zehner*, No. 2:12-CV-533, 2014 WL 2504574, at *2–3 (M.D. Ala. Jun. 3, 2014) (Thompson, J.) and *Jett v. Van Eerden Trucking Co.*, No. CIV-10-1073, 2012 WL 37504, at *4 (W.D. Okla. Jan. 9, 2012) (Heaton, J.)). And a third group finds that the responsibility and control regulations "create a rebuttable presumption of employment that can be rebutted by resort to state common law principles." *Id.* (first citing *Delaney v. Rapid Response, Inc.*, 81 F. Supp. 3d 769, 779 (D.S.D. 2015) (Viken, C. J.); then citing *Thomas v. Johnson Agri-Trucking*, 802 F. Supp. 2d 1242, 1249 (D. Kan. 2011) (Melgren, J.); and then citing *Bays v. Summitt Trucking, LLC*, 691 F. Supp. 2d 725, 730–31 (W.D. Ky. 2010) (Coffman, J.)).

Without question, the Fifth Circuit applied the first approach prior to the 1992 amendments. *See Simmons*, 478 F.2d at 860, 867; *Price*, 727 F.2d at 496. And Liberty Lane cites no cases—and indeed the Court found none—indicating the Fifth Circuit abandoned this approach after the 1992 amendments. To the contrary, in *Jackson*—a case post-dating the 1992 amendments—the Fifth

Circuit again stated that a statutory employer is "vicariously liable" for the negligence of its statutory employee. *See* 101 F.3d at 1086 (first citing *Simmons*, 478 F.2d at 867; and then citing *Price*, 727 F.2d at 497). As recently as 2017, at least one district court in this circuit has continued to apply the first approach, finding that the statutory employer doctrine imposes vicarious liability. *See Puga*, 227 F. Supp. 3d at 763–64. While Liberty Lane argues that the *Puga* court "assumed" that statutory employer status under the regulations confers vicarious liability, it provides no argument as to why *Simmons*, *Price*, and *Jackson* are not controlling. *See* (D.E. 204, p. 7). As such, this Court will not deviate from well-established Fifth Circuit precedent.[6]

As discussed above, Liberty Lane is Lehal's statutory employer as a matter of law. *See supra* section III.A. Consequently, Liberty Lane is vicariously liable for Lehal's alleged negligence, and Plaintiffs are entitled to partial summary judgment.

---

[6] This Court acknowledges that the texts of § 14102(a) and the responsibility and control regulations do not suggest any intent to preempt state law regarding vicarious liability. In fact, the amended text of the responsibility and control regulations appears to do just the opposite. *See* 49 C.F.R. § 376.12(c)(4) (clarifying that nothing in § 376.12(c)(1) "is intended to affect whether the lessor or driver provided by the lessor is an independent contractor or an employee of the authorized carrier lessee"). And while Plaintiffs suggest that "it would make no sense" for the responsibility and control regulations not to impose vicarious liability on motor carriers for negligent operation of their leased equipment, (D.E. 210, p. 7), the FMCSR has its own scheme for imposing penalties for failure to comply with regulations, *see* 49 C.F.R. § 390.37 (2022) ("Any person who violates the rules set forth in this subchapter . . . may be subject to civil or criminal penalties."); *White*, 2018 WL 2462921, at *5 ("Congress and the Secretary of Transportation have developed their own methods of ensuring compliance with their rules." (citation omitted)). Nonetheless, this case is not before the Court as a matter of first impression—the Fifth Circuit has spoken directly to the issue, and this Court is bound as a result. *See In re Bonvilian Marine Serv., Inc.*, 19 F.4th 787, 792 (5th Cir. 2021).

## IV. Conclusion

For the reasons above, the Court **GRANTS** Plaintiffs' motion for partial summary judgment regarding statutory employment. (D.E. 175).

SO ORDERED.

_____
DAVID S. MORALES
UNITED STATES DISTRICT JUDGE

Dated: Corpus Christi, Texas
       March  29 , 2024