Case 2:19-cv-00094   Document 259   Filed on 03/29/24 in TXSD   Page 1 of 10

United States District Court
Southern District of Texas
**ENTERED**
March 29, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ADRIANNA MORALES, *et al.*, | § § § | |
| Plaintiffs, | § | |
| V. | § | CIVIL ACTION NO. 2:19-CV-00094 |
| OK TRANS, INC., *et al.*, | § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION GRANTING PENSKE LOGISTICS' MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant Penske Logistics LLC's ("Penske") motion for summary judgment. (D.E. 180). Plaintiffs are opposed to the motion. *See* (D.E. 196, p. 1). For the reasons below, the Court **GRANTS** the motion. (D.E. 180).

### I. Background

The facts of this case are straightforward and were recounted in the Court's order denying Penske's earlier motion for summary judgment. *See* (D.E. 123, p. 1–3). On or about December 26, 2018, in Bee County, Texas, Satnam Singh Lehal was driving a tractor-trailer owned and operated by OK Transport, Inc. ("OK Trans."). *See* (D.E. 223, p. 10). At some point, the tractor-trailer jackknifed, crossed into the oncoming lane, and collided with a pick-up truck driven by Lyndon Dean Meyer, who died on impact. *See id.* at 10–11.

Penske previously moved for summary judgment, arguing that it acted as a broker and not a motor carrier for purposes of the shipment at issue in this case. *See* (D.E. 98, p. 5–6, 9–10). The Court denied that motion, finding disputed fact issues as to whether Penske acted as a motor carrier or broker. *See* (D.E. 123, p. 7–10).

In the instant motion, Penske assumes—for purposes of this motion only—that it acted as

a motor carrier and not as a broker. *See* (D.E. 180, p. 1–2, n.1, 6). According to Penske, even if it acted as a motor carrier, it was not Lehal's statutory employer because it had no arrangement with Lehal or OK Trans. *See id.* at 6–10.

## II. Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law[.]" *Id.* In determining whether a judgment as a matter of law is appropriate, the court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. The "court must view the evidence 'in the light most favorable to the [nonmovant].'" *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). A court is not required to search the record for evidence supporting a party's opposition to summary judgment. *Stults v. Conoco, Inc.*, 76 F.3d 651, 657 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

The movant bears the "initial responsibility" to present evidence proving that no genuine dispute of material fact exists, but the movant does not have to present supporting evidence "negating the opponent's claim." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (emphasis omitted). If the movant "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam). If the movant meets this burden, then the burden shifts to the nonmovant to "go beyond

the pleadings and designate specific facts showing that there is a genuine issue for trial." *Id.* (citing *Celotex*, 477 U.S. at 324). The nonmoving party "must identify specific evidence in the summary judgment record" and demonstrate how that evidence supports their claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007) (internal quotations and citations omitted). The nonmoving party's burden cannot be satisfied by "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (internal quotations and citation omitted). If the nonmovant fails to meet this burden, then the movant is entitled to summary judgment. *Little*, 37 F.3d at 1076.

### III. Discussion

#### A. The Statutory-Employer Doctrine

As discussed in the Court's previous order granting Plaintiffs' partial motion for summary judgment, there are two theories of statutory employment. *See* (D.E. 258, p. 3). Only the "responsibility and control" theory is relevant here. *See* (D.E. 196, p. 7–8 (containing no argument that Penske is Lehal's employer as contemplated by 49 C.F.R. § 390.5)); D.E. 213, p. 2). Under the responsibility and control theory, an entity is a statutory employer if four conditions are met:

(1) the entity is a motor carrier and not a broker;

(2) it does not own the vehicle involved in the incident;

(3) it is using the vehicle in interstate commerce; and

(4) it does not employ the driver.

*See* (D.E. 123, p. 4) (order denying Penske's previous motion for summary judgment); *Sentry Select Ins. Co. v. Drought Transp., LLC*, No. 15-CV-890, 2017 WL 5382168, at *2 (W.D. Tex. May 3, 2017) (Lamberth, J.); *Sharpless v. Sim*, 209 S.W.3d 825, 829 (Tex. App.—Dallas 2006, pet. denied)); *McKeown v. Rahim*, 446 F. Supp. 3d 69, 78–79 (W.D. Va. 2020) (Dillon, J.).

Only the third condition—whether Penske used the vehicle at issue in interstate commerce—is relevant to the instant motion.[1] *See* (D.E. 180; D.E. 196, p. 2). After viewing all the evidence in the light most favorable to Plaintiffs, the Court finds that Penske is entitled to summary judgment because a motor carrier cannot use a vehicle in interstate commerce unless it has an arrangement with the owner or driver of the vehicle.

As an initial matter, the parties disagree as to the proper wording of the condition at issue—Penske argues that the Court must determine whether "the carrier operates the vehicle under an arrangement with the owner to provide transportation subject to federal regulations[.]" *See* (D.E. 180, p. 7) (quoting *Hernandez v. Union Pac. R.R. Co.*, No. EP-17-CV-7, 2018 WL 4169328, at *3 (W.D. Tex. June 13, 2018) (Montalvo, J.)). Conversely, Plaintiffs focus on whether Penske "used" the vehicle owned by OK Trans. *See* (D.E. 196, p. 7). In reply, Penske suggests that relying on *Sentry Select Ins. Co.*, 2017 WL 5382168, at *2, for the "use" standard is misguided. *See* (D.E. 213, p. 3 n.1). In *Sentry*, the court cited *Sharpless*, 209 S.W.3d at 829, for the proposition that the correct condition is that "the company is *using* the truck in interstate commerce[.]" 2017 WL 5382168, at *2 (emphasis added). But *Sharpless* provides a slightly different standard: "the carrier operates the vehicle under an 'arrangement' with the owner to provide transportation subject to federal regulations[.]" 209 S.W.3d at 829 (citation omitted).

At bottom, the parties' disagreement turns on whether a motor carrier is statutorily liable for a driver's negligence only when that carrier has a *direct arrangement* with the owner of the vehicle. *See* (D.E. 196, p. 7; D.E. 213, p. 4–5). This Court has yet to address this question—in its

---

[1] Penske concedes it acted as a motor carrier for purposes of this motion. *See* (D.E. 180, p. 6) (noting that "even if" Plaintiff's allegation that Penske acted as a motor carrier is "accepted as true for purposes of this motion, Plaintiffs' claims against [Penske] cannot succeed."). Plaintiffs agree. *See* (D.E. 196, p. 6). As such, the first condition is not at issue. And Penske admits that it "did not own the vehicle involved in the subject accident, nor did it employ [Lehal]." (D.E. 180, p. 7). Thus, only the third condition is at issue here.

D.E. 258 order, the Court held that Liberty Lane "used" OK Trans's vehicle to fulfill its obligation to transport the shipment on behalf of Penske. (D.E. 258, p. 8). There, it was undisputed that Liberty Lane had an arrangement with OK Trans, the owner of the vehicle, to transport the shipment. *See id.* (finding that "Liberty Lane had an agreement with OK Trans that Lehal would drive OK Trans's vehicle on behalf of Liberty Lane to fulfill Liberty Lane's agreement with Penske"). Conversely, in the instant motion, Penske argues that it had no arrangement with OK Trans. *See* (D.E. 180, p. 6; D.E. 213, p. 5).

As such, the Court must determine: (1) whether an arrangement between a motor carrier and the owner or driver of a vehicle is required before the motor carrier may be considered the driver's statutory employer—thus subjecting the motor carrier to vicarious liability—and (2) if so, whether a direct arrangement existed between Penske and OK Trans or Lehal.

### B. Whether an Arrangement is Necessary

Penske argues that it cannot be Lehal's statutory employer because "there was no written or oral lease, or any other arrangement[,]" between Penske and Lehal or OK Trans. (D.E. 180, p. 6). According to Penske, it is five steps removed from Lehal—Penske contracted Penske Transportation Management LLC ("PTM") to broker the shipment to Liberty Lane; Liberty Lane contracted Liberty Commercial, LLC, to sub-broker the shipment to OK Trans; and OK Trans employed Lehal to drive the shipment. *See id.* at 7. Penske argues that five steps removed is four steps too many; absent a "direct arrangement," it cannot be vicariously liable for Lehal's negligence. *Id.* at 7–8. Conversely, Plaintiffs argue that the Court may impose statutory-employer liability on Penske even absent a direct arrangement between Penske and OK Trans or Lehal. (D.E. 196, p. 2).

As discussed in the Court's order granting Plaintiffs' motion for partial summary judgment,

Congress amended federal law in 1956 to require motor carriers to assume control of the vehicles they lease. (D.E. 258, p. 10–11); *Price*, 727 F.2d at 496. In relevant part, 49 U.S.C. § 14102 provides:

> (a) General authority of Secretary—The Secretary may require a motor carrier providing transportation subject to jurisdiction under subchapter I of chapter 135 that uses motor vehicles not owned by it to transport property under an arrangement with another party to—
>
> (1) make the arrangement in writing signed by the parties specifying its duration and the compensation to be paid by the motor carrier;
> (2) carry a copy of the arrangement in each motor vehicle to which it applies during the period the arrangement is in effect;
> (3) inspect the motor vehicles and obtain liability and cargo insurance on them; and
> (4) have control of and be responsible for operating those motor vehicles in compliance with requirements prescribed by the Secretary on safety of operations and equipment, and with other applicable law as if the motor vehicles were owned by the motor carrier.

49 U.S.C. § 14102(a). The intent of the amendments was "to ensure that interstate motor carriers would be fully responsible for the" operation of leased vehicles "and the supervision of drivers, thus protecting the public" from motor carriers who might otherwise attempt to shirk financial responsibility for accidents. *Crocker v. Morales-Santana*, 854 N.W.2d 663, 668 (N.D. 2014) (citation omitted); *see also Simmons*, 478 F.2d at 866–67, 866 n.21. Consistent with the text and purpose of the statute, the Department of Transportation promulgated regulations—referenced throughout this Order as the "responsibility and control" regulations—requiring motor carriers who use equipment they do not own to enter into written leases with the entity that owns the equipment. *See* 49 C.F.R. §§ 376.11–.12. The regulations further require that the lease grant the motor carrier "exclusive possession, control, and use of the equipment for the duration of the lease" and that the lease "provide that the authorized carrier lessee shall assume complete operation for the operation of the equipment for the duration of the lease." *Id.* § 376.12(c)(1).

Courts applying § 14102 and the responsibility and control regulations regularly impose statutory-employer liability on motor carriers when the carrier has a direct arrangement with the owner or driver of the vehicle at issue. *See Puga*, 227 F. Supp. 3d at 763–64 (imposing statutory-liability on a motor carrier where there was evidence of an arrangement between the carrier and the driver); *Taghavi v. Soto*, No. 3:21-CV-2557-S-BN, 2023 WL 7862769, at *4 (W.D. Tex. Oct. 12, 2023) (Horan, Mag. J.) (articulating that statutory-employer liability requires that a carrier operate the vehicle under an arrangement with the owner), *adopted*, No. 3:21-CV-2557-S-BN, 2023 WL 7706721, at *1 (Nov. 14, 2023) (Scholer, J.); *Del Real v. Transportes De Carga FEMA S.A. de C.V.*, No. 5:17-CV-00129, 2018 WL 11429351, at *3–4 (S.D. Tex. Nov. 2, 2018) (Saldaña, J.) (finding no statutory-employment liability where there was no evidence that carrier had an arrangement with driver); *Hutchinson v. Shuman*, No. 4:07-CV-37, 2008 WL 11342643, at *4 (N.D. Miss. June 24, 2008) (Aycock, J.) (imposing statutory-employer liability where the carrier had a contract with the owner of the vehicle); *Zamalloa v. Hart*, 31 F.3d 911, 918 (9th Cir. 1994) ("[Motor] carriers are liable as the statutory employers of the drivers from whom they lease trucks during the term of the lease, regardless of whether the lease is written or oral."); *Sharpless*, 209 S.W.3d 825, 829–30 (Tex. App.—Dallas 2006, no pet.) (affirming trial court's decision finding statutory-employer liability where there was an arrangement between the carrier and the driver).[2]

Conversely, this Court found no cases where a court imposed statutory-employer liability *absent* an arrangement between the motor carrier and the vehicle's owner or driver. And while Plaintiffs argue that nothing in § 14102(a)'s text requires an arrangement between Penske and Lehal or OK Trans, (D.E. 196, p. 7–8), they fail to grapple with the responsibility and control

---

[2] It does not appear that the issue of whether an arrangement between the owner or driver of a vehicle and the motor carrier leasing the vehicle is necessary to impose statutory liability was before any of the courts in these cases. Rather, each case involved facts where the motor carrier had an arrangement with the owner or driver of the vehicle at issue.

regulations, *see id.* These regulations require a lease between a motor carrier who uses equipment it does not own and the owner of that equipment. *See* 49 C.F.R. § 376.12(a). The regulations also define a "lease" as an "arrangement in which the *owner* grants the use of equipment, with or without driver, for a specified period to an authorized carrier for use in the regulation transportation of property[.]" 49 C.F.R. § 376.2 (emphasis added); *see also Shimko v. Jeff Wagner Trucking, LLC*, No. 11-CV-831, 2013 WL 10075919, at *4 (W.D. Wis. June 28, 2013) (Conley, J.). In their attempt to expand statutory-employer liability to arrangements between motor carriers, Plaintiffs cite § 376.22, (D.E. 196, p. 9–11), which contemplates an arrangement where a motor carrier lessor holds equipment under a lease and then leases that same equipment to a second motor carrier. In this scenario, § 376.22 requires the motor carriers to enter into a "written agreement" providing "that control and responsibility for the operation of the equipment shall be that of the lessee from the time possession is taken by the lessee[.]" § 376.22(c)(2). But Plaintiffs cite no cases, and the Court found none, where a court has applied § 376.22 to impose statutory-employer liability on a carrier with no relationship to the owner or driver of the equipment. *See* (D.E. 196). This lack of case law makes sense, as the statutory and regulatory scheme at issue here is concerned with motor carriers trying to escape liability for negligent drivers by leasing equipment and then treating the drivers of the leased equipment as independent contractors. *See Waldhart v. 7S Trucking, Inc.*, No. 4:15-CV-101, 2016 WL 11476943, at *4 (D. N.D. Dec. 9, 2016) (Erickson, J.). But a lease between two authorized carriers is outside this concern. Because the motor carrier who leased the equipment from the *owner* is subject to the statutory-employer doctrine, the public is protected from a motor carrier's attempt to designate the driver as an independent contractor to avoid liability.[3]

---

[3] This in no way suggests a driver can have only one statutory employer. The Court previously rejected that argument, *see* (D.E. 287, p. 8–9), and does so again here. When multiple motor carriers have arrangements with the owner or driver of a vehicle, then multiple motor carriers may be subject to the statutory-employer doctrine. *Id.*

Granted, this Court agrees with Plaintiffs that failure to comply with the written lease requirement in § 14102 or the responsibility and control regulations does not shield a carrier from statutory-employer liability. *See* (D.E. 258); *Jackson v. O'Shields*, 101 F.3d 1083, 1089 (5th Cir. 1996). As Judge Ramos stated in *Puga*, "any requirement of a lease is a consequence of triggering the statute, not the means for triggering the statute. Therefore, no lease—written or oral—is required prior to imposing statutory liability[.]" 227 F. Supp. 3d at 764. As such, motor carriers cannot skirt statutory liability by failing to formalize their arrangements into leases. But here Penske argues that it had no arrangement with OK Trans or Lehal at all—not that it had an arrangement but did not formalize it via a written or oral lease. *See* (D.E. 180, p. 6). And § 14102(a) is concerned with whether the "necessary relationship" exists—not whether it is termed a lease. *See Puga*, 227 F. Supp. 3d at 764.[4] The Court also agrees with Plaintiffs that "use" presupposes the existence of an arrangement. *See* (D.E. 196, p. 9) (arguing that, barring theft, any "use" necessitates an arrangement). The question is whom that arrangement must be between. And after considering the text of § 14102, the responsibility and control regulations, and the relevant case law, the Court finds that an arrangement must exist between the motor carrier and the owner or driver of the vehicle at issue to trigger statutory-employer liability. To hold otherwise would expand the scope of the statutory-employer doctrine beyond that which other courts have articulated. This Court declines to take that step.

### C. Whether an Arrangement Existed Between Penske and OK Trans or Lehal

The parties agree that Penske's arrangement was with Liberty Lane and not with OK Trans or Lehal. *See* (D.E. 180, p. 6–7) (containing Penske's allegations that it did not have an

---

[4] The issue of what constitutes a "necessary relationship" to impose statutory liability was not squarely before the *Puga* court. *See id.*

arrangement with OK Trans or Lehal); (D.E. 196, p. 7–8) (Plaintiffs' response, which argues that Penske is "Lehal's statutory employer *even though Penske's arrangement was with Liberty*") (emphasis added)). In fact, Plaintiffs admit that "Penske did not directly communicate with [OK Trans] or Lehal[.]" (D.E. 196, p. 9). Thus, it is undisputed that Penske did not have an arrangement with OK Trans or Lehal.

The Court acknowledges Plaintiffs' contention that there is evidence from which a jury could find that Liberty Lane advised Penske's sister company, PTM, that OK Trans would transport the shipment. *See id.* at 4–5. However, even assuming PTM knew that OK Trans would transport the shipment, that knowledge is insufficient to create a factual dispute as to the existence of an arrangement as between Penske and OK Trans. Notably, Plaintiffs do not allege that *Penske* was aware that OK Trans was to transport the shipment—only that *PTM* was. *See id.* at 4–5. And even if Penske was aware that Liberty Commercial had sub-brokered the shipment to OK Trans, there is no evidence that Penske engaged OK Trans in any manner. As such, no arrangement existed, and Penske is entitled to judgment as a matter of law.

### IV. Conclusion

For the reasons above, the Court **GRANTS** Defendant Penske's motion for summary judgment. (D.E. 180).

SO ORDERED.

DAVID S. MORALES
UNITED STATES DISTRICT JUDGE

Dated: Corpus Christi, Texas
    March 29, 2024