IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MIKE CRANE, AS GUARDIAN OF THE ESTATE OF A MINOR D.J.M., LAVON BETH MEYER AND LEE ALLEN MEYER INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF LYNDON DEAN MEYER<br><br>Plaintiffs,<br><br>VS.<br><br>LIBERTY LANE, L.L.C., AND SATNAM SINGH LEHAL.<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ CIVIL NO. 2:19-CV-00094<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**PLAINTIFFS' FIFTH AMENDED COMPLAINT**

TO THE HONORABLE DISTRICT COURT JUDGE:

COME NOW Plaintiffs, MIKE CRANE, as Guardian of the Estate of Minor D.J.M., LAVON BETH MEYER AND LEE ALLEN MEYER, Individually and as Representative of the Estate of Lyndon Dean Meyer, , hereinafter called Plaintiffs, complaining of SATNAM SINGH LEHAL**,** LIBERTY LANE, L.L.C., PENSKE LOGISTICS LLC, and PENSKE TRANSPORTATION MANAGEMENT LLC, hereinafter called Defendants, and for cause of action would respectfully show the Court the following:

1.00 **PARTIES**

    1.01    Plaintiffs are residents of Goliad County, Texas.

    1.02    Defendant, SATNAM SINGH LEHAL, an individual resident of California, has been served and appeared herein.

1

1.03     Defendant LIBERTY LANE, L.L.C. (hereinafter individually referred to as "LIBERTY LANE") is a limited liability company organized under the laws of the state of North Carolina with its principal place of business and home office located at 27 Drakes Meadow Ln., Arden, North Carolina 28704. LIBERTY LANE is a federally authorized motor carrier operating under USDOT #2159555. LIBERTY LANE has one member: Aleksandr Lastivka, who is a citizen of North Carolina domiciled at 27 Drakes Meadow Ln., Arden, North Carolina 28704. Accordingly, LIBERTY LANE is a citizen of North Carolina and only North Carolina. LIBERTY LANE has been served and appeared herein.

1.04     Defendant PENSKE LOGISTICS LLC (hereinafter individually referred to as "PENSKE LOGISTICS") is a limited liability company organized under the laws of the state of Delaware with its principal place of business and home office located at 2675 Morgantown Road, Reading, PA 19607. PENSKE LOGISTICS is a federally authorized motor carrier operating under USDOT #268015. Plaintiff does not have access to the information necessary to affirmatively plead upon personal knowledge which state(s) PENSKE LOGISTICS is a citizen of. Based on information and belief obtained from conducting a reasonable investigation by examining the secretary of state websites for the states of Texas, Pennsylvania, and Delaware, conducting case law research on cases in which PENSKE LOGISTICS[1] was a named party (which indicate that PENSKE LOGISTICS is only a citizen of Delaware, Maryland, Michigan,

---

[1] "Based on the citizenship of its various members as detailed in the Joint Attorney Certification, Penske is a citizen of the states of Delaware, Maryland, Michigan, Pennsylvania, and Tennessee." *Mangini v. Penske Logistics*, No. 11-0270 (NLH/KMW), 2012 U.S. Dist. LEXIS 141591, at *2 (D.N.J. Sep. 28, 2012).

2

Pennsylvania, and Tennessee), examining a corporate disclosure statement PENSKE LOGISTICS filed in another case in this Court (which represents that PENSKE LOGISTICS is only a citizen of Delaware, Maryland, Michigan, Pennsylvania, and Tennessee) and examining other publicly available information about PENSKE LOGISTICS on the internet (all of which provided no indication that PENSKE LOGISTICS is a citizen of Texas), Plaintiff in good faith pleads that PENSKE LOGISTICS is a limited liability company that does not have any member that is a citizen of Texas. Accordingly, PENSKE LOGISTICS is not a citizen of Texas. PENSKE LOGISTICS has been served and appeared herein.

1.05     Defendant PENSKE TRANSPORTATION MANAGEMENT LLC, (hereinafter individually referred to as "PENSKE TRANSPORTATION MANAGEMENT") is a limited liability company organized under the laws of the state of Delaware with its principal place of business and home office located at 2675 Morgantown Road, Reading, PA 19607. PENSKE TRANSPORTATION MANAGEMENT is a federally authorized broker operating under USDOT #2353572. PENSKE TRANSPORTATION MANAGEMENT has one member: PENSKE LOGISTICS. Plaintiff does not have access to the information necessary to affirmatively plead upon personal knowledge which state(s) PENSKE TRANSPORTATION MANAGEMENT is a citizen of. Based on the same information and belief obtained from conducting a reasonable investigation into the citizenship of PENSKE LOGISTICS, as discussed in Paragraph 1.03 above, Plaintiff in good faith pleads that PENSKE TRANSPORTATION MANAGEMENT is a limited liability company that does not have any member which is a citizen of Texas. Accordingly, PENSKE TRANSPORTATION MANAGEMENT is not a citizen of Texas. PENSKE

3

TRANSPORTATION MANAGEMENT has been served and appeared herein.

2.00 **JURISDICTION AND VENUE**

    2.01    The amount in controversy, exclusive of interest and costs, exceeds the minimum jurisdictional limits of this court.

    2.02    Jurisdiction is proper in this court as there is diversity of citizenship between the parties as provided by 28 U.S.C. §1332(a).

    2.03    The Court has personal jurisdiction over the Defendants because they purposefully availed themselves of the rights and privileges of Texas law. PENSKE TRANSPORTATION MANAGEMENT selected and hired LIBERTY LANE, a motor carrier, to provide for the transportation of goods, via a commercial motor vehicle, on the public highways of Texas for pecuniary gain. LIBERTY LANE and PENSKE LOGISTICS agreed to undertake to perform transportation services in Texas for pecuniary gain. This lawsuit arises out of Defendants' contacts and business conducted within the state of Texas, inasmuch as this lawsuit arises out of the motor vehicle crash in the state of Texas involving LYNDON DEAN MEYER, deceased, and the tractor-trailer driven by SATNAM SINGH LEHAL, which was providing the transportation of the goods that SATNAM SINGH LEHAL was under dispatch and en route to pick up over the public highways in the state of Texas at the time of the crash. At the time of the crash, PENSKE LOGISTICS and LIBERTY LANE were the statutory employers of SATNAM SINGH LEHAL and were therefore operating as motor carriers in Texas at the time of the crash, as set forth in more detail in Paragraphs 3.02-3.04, below.

2.04   Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this claim occurred in this district. LYNDON DEAN MEYER, deceased, and Defendant, SATNAM SINGH LEHAL, were involved in an automobile crash within this district.

3.00   **RESPONDEAT SUPERIOR**

3.01   Whenever in this Complaint it is alleged that a Defendant did any act or thing, it is meant that the Defendant's agents, officers, servants, employees or representatives did such act or thing and that at the time such act or thing was done, it was done with the full authorization or ratification of said Defendant or was done in the normal and routine course and scope of employment of Defendant's officers, agents, servants, employees or representatives.

3.02   The following is pleaded on information and belief: Adient, US LLC (hereinafter referred to as "Adient") is one of the largest automotive seat suppliers in the world with its United States operation based in Michigan. Adient supplies automobile seats to Tesla. To facilitate supplying its product to Tesla, Adient has a facility in Newark, California, which is close to Tesla's facility in Freemont, California (both generally in the greater "Bay Area" surrounding San Francisco). Adient has a relationship with a company in Mexico that manufactures (either in whole or in part) the automobile seats that Adient supplies Tesla. The seats are transported across the U.S. border to Laredo, Texas, to await transport to Adient's facility in Newark, California. Thus, Adient has a constant need for eighteen-wheelers to transport its products from Laredo, Texas to Newark, California (and sometimes back). As a result,

5

Adient contracted with PENSKE LOGISTICS to transport shipments of goods (automobile seats) from Laredo to Newark (and sometimes back). With respect to the shipment that SATNAM SINGH LEHAL was dispatched to and en route to pick up at the time of the crash giving rise to this case, PENSKE LOGISTICS agreed and undertook to transport Adient's goods from Laredo, Texas to Newark, California as a "motor carrier" under its federal motor carrier operating authority. Pursuant to 49 U.S.C. 13901(c) (commonly referred to as "MAP-21"), 49 U.S.C. 14102, and the Federal Motor Carrier Safety Regulations, once PENSKE LOGISTICS agreed and undertook to transport Adient's goods from Laredo, Texas to Newark, California as a "motor carrier", it could not later change its designation as the "motor carrier" responsible for the transportation services in interstate commerce of Adient's goods. The commercial motor vehicle that SATNAM SINGH LEHAL was operating at the time of this crash was not owned by PENSKE LOGISTICS. Pursuant to 49 C.F.R. Chapter 376 and 49 U.S.C. 14102, PENSKE LOGISTICS could only provide such transportation services with equipment that it did not own pursuant to a written lease that gave PENSKE LOGISTICS responsibility for and control over the equipment, which made PENSKE LOGISTICS the statutory employer of the SATNAM SINGH LEHAL at the time of this crash. And pursuant to 49 C.F.R. section 390.5, the driver was an "employee," and PENSKE LOGISTICS was his "employer," even if the driver was denominated an "independent contractor" or a common law employee of another. Accordingly, PENSKE LOGISTICS is vicariously liable for all negligent acts committed by its statutory employee, SATNAM SINGH LEHAL, in the

6

course and scope of his operating the eighteen-wheeler after he was dispatched and en route to pick up the goods to be hauled from Laredo, TX to Newark, CA, including at the time of this crash, and for the resulting serious injuries to Plaintiffs and damages suffered by Plaintiffs.

3.03    LIBERTY LANE also agreed and undertook to transport the automobile seats from Laredo, Texas to Newark, California as a motor carrier under its federal motor carrier operating authority. Pursuant to 49 U.S.C. 13901(c) (commonly referred to as "MAP-21"), 49 U.S.C. 14102, and the Federal Motor Carrier Safety Regulations, once LIBERTY LANE agreed and undertook to transport Adient's goods from Laredo, Texas to Newark, California as a "motor carrier", it could not later change its designation as the "motor carrier" responsible for the transportation services in interstate commerce of Adient's goods. The commercial motor vehicle that SATNAM SINGH LEHAL was operating at the time of this crash was not owned by LIBERTY LANE. Pursuant to 49 C.F.R. Chapter 376 and 49 U.S.C. 14102, LIBERTY LANE could only provide such transportation services with equipment that it did not own pursuant to a written lease that gave LIBERTY LANE responsibility for and control over the equipment, which made LIBERTY LANE the statutory employer of the SATNAM SINGH LEHAL at the time of this crash. And pursuant to 49 C.F.R. section 390.5, the driver was an "employee," and LIBERTY LANE was his "employer," even if the driver was denominated an "independent contractor" or a common law employee of another. Accordingly, LIBERTY LANE is vicariously liable for all negligent acts committed by its statutory employee, SATNAM SINGH LEHAL, in the

7

course and scope of his operating the eighteen-wheeler after he was dispatched and en route to pick up the goods to be hauled from Laredo, TX to Newark, CA, including at the time of this crash, and for the resulting serious injuries to Plaintiffs and damages suffered by Plaintiffs.

3.04    Because PENSKE LOGISTICS and LIBERTY LANE agreed to be responsible for the transportation of the goods in interstate commerce under their federal motor carrier operating authority, and therefore qualified as "motor carriers" and "employers" of SATNAM SINGH LEHAL pursuant to federal statutes and the Federal Motor Carrier Safety Regulations, they are vicariously liable for the negligence of the driver, SATNAM SINGH LEHAL. Although it is not required for a statutory employer to be vicariously liable for the negligence of a statutory employee in operating a commercial motor vehicle, SATNAM SINGH LEHAL was acting in the course and scope of this statutory employment for PENSKE LOGISTICS and LIBERTY LANE at the time of the crash. PENSKE LOGISTICS and LIBERTY LANE are vicariously liable for the negligence of SATNAM SINGH LEHAL that was a proximate cause of the crash and the Plaintiffs' injuries and damages.

4.00    **STATEMENT OF FACTS AND CAUSES OF ACTION**

4.01    Plaintiffs bring this suit to recover damages sustained by Plaintiffs as a result of the personal injuries to, and death of, LYNDON DEAN MEYER resulting from an eighteen-wheeler crash on December 26, 2018, in Bee County, Texas with a commercial motor vehicle eighteen-wheeler tractor-trailer owned by nonparty OK Transport and driven by SATNAM SINGH LEHAL in the course and

scope of his employment for nonparty OK Transport. The crash was proximately caused by the negligence and/or negligence per se of SATNAM SINGH LEHAL in operating the eighteen-wheeler, including but not limited to driving too fast for the conditions then existing. At such time and place, SATNAM SINGH LEHAL lost control of the eighteen-wheeler he was driving and crossed over into the oncoming lane of traffic on State Highway 202 and crashed into the pickup driven by LYNDON DEAN MEYER, deceased. As a result of the negligence of SATNAM SINGH LEHAL, LYNDON DEAN MEYER sustained conscious pain and suffering prior to his death, including pre-collision mental anguish and terror of the impending collision and post-collision physical pain, suffering and mental anguish as a result of his injuries sustained in the collision. As a result of the incident, LYNDON DEAN MEYER, deceased, sustained personal injuries, resulting in his death.

4.02    The injuries and damages suffered by Plaintiffs were directly and proximately caused by the negligence and/or negligence per se of the Defendants, individually and acting by and through their servants, agents, employees, and statutory employees, as herein set out. At the time and place in question, SATNAM SINGH LEHAL was the statutory employee of PENSKE LOGISTICS and LIBERTY LANE because each of these Defendants agreed and undertook to transport the shipment under its federal motor carrier operating authority and to be responsible for the transportation of the goods in interstate commerce, making them both a "motor carrier" and "employer" under federal statutes and regulations, all as set forth in more detail in Paragraphs 3.02-3.04, above. Thus, Defendants PENSKE LOGISTICS and LIBERTY LANE are each vicariously liable for the negligence SATNAM SINGH LEHAL committed in

operating the eighteen-wheeler on the occasion in question. Each of these Defendants, acting through their agents, servants, employees and statutory employees (including SATNAM SINGH LEHAL), in the course and scope of their employment, were guilty of acts of negligence and/or negligence per se, each of which jointly and severally proximately caused the injuries to, and death of, LYNDON DEAN MEYER and the damages suffered by Plaintiffs.

4.03    The crash and serious injuries to, and death of, LYNDON DEAN MEYER and damages to Plaintiffs made the basis of this suit further resulted from the negligence of Defendant, PENSKE TRANSPORTATION MANAGEMENT acting by and through its servants, agents, and employees, in hiring LIBERTY LANE to provide for the transportation of goods originating in Laredo, Texas, with a final destination of Newark, California. PENSKE TRANSPORTATION MANAGEMENT knew or should have known that LIBERTY LANE was incompetent, unsafe, and careless in using commercial motor vehicles to transport property on the public roadways among the motoring public. PENSKE TRANSPORTATION MANAGEMENT failed to exercise ordinary care to investigate LIBERTY LANE and ascertain LIBERTY LANE'S capacity, capabilities, competence, and qualifications in operating commercial vehicles in the transportation of property. Specifically, PENSKE TRANSPORTATION MANAGEMENT did not exercise ordinary care to investigate LIBERTY LANE's operation as a motor carrier such as how many power units and drivers it possessed or utilized to transport property, or its policies, procedures, or practices (including any safety management controls) to ensure that its transportation services were provided by safe and competent drivers. PENSKE

TRANSPORTATION MANAGEMENT did not examine or ignored relevant safety indicators — including BASIC scores, Out-of-Service violations, and driver preventable crash history — available on the FMCSA's public website regarding LIBERTY LANE. Further, PENSKE TRANSPORTATION MANAGEMENT did not inquire into or require LIBERTY LANE to explain the facts and circumstances regarding why its BASIC scores indicated a history of unsafe operation or explain what LIBERTY LANE was doing to ensure safe operation in light of these unsafe BASIC scores. PENSKE TRANSPORTATION MANAGEMENT did not inquire into or require LIBERTY LANE to explain the facts and circumstances regarding why its Out-of-Service rates[2] were higher than the national average when compared to those of other motor carriers after roadside enforcement inspections, or explain what LIBERTY LANE was doing to ensure safe operation in light of these higher-than-average Out-of-Service rates. Further, PENSKE TRANSPORTATION MANAGEMENT never required LIBERTY LANE to undergo any review of its qualifications or procedures subsequent to initially hiring LIBERTY LANE. Had PENSKE TRANSPORTATION MANAGEMENT exercised ordinary care in investigating and selecting LIBERTY LANE to transport the shipment that SATNAM SINGH LEHAL was dispatched and en route to pick up at the time of the crash, it would have learned that LIBERTY LANE was not a competent motor carrier to safely transport goods by commercial motor vehicle on a public highway, including

---

[2] Out-of-Service violations are safety violations that are critical and pose an imminent threat to the motoring public, and therefore must be remedied before the commercial motor vehicle is placed back onto the public highways.

that LIBERTY LANE: (i) was a non-rated, single-unit motor carrier; (ii) had publicly available FMCSA BASIC scores indicating both a long term and recent history of unsafe operation, including "Unsafe Driving" and "Vehicle Maintenance"; (iii) had Out-of-Service rates higher than the national average after roadside enforcement inspections; and (iv) had only one driver for its operation and its only driver had previously caused a reportable crash that was deemed preventable. Moreover, PENSKE TRANSPORTATION MANAGEMENT either knew, or should have known, that LIBERTY LANE did not report owning or leasing enough tractors, nor regularly employ enough drivers to complete the loads it had committed to haul for PENSKE TRANSPORTATION MANAGEMENT and for which PENSKE TRANSPORTATION MANAGEMENT actually paid LIBERTY LANE. This meant that PENSKE TRANSPORTATION MANAGEMENT either knew or should have known that LIBERTY LANE was subcontracting out the responsibility to transport shipments to other motor carriers that it had agreed LIBERTY LANE would transport itself; and said subcontracted motor carriers had not been vetted or approved by PENSKE TRANSPORTATION MANAGEMENT, meaning PENSKE TRANSPORTATION MANAGEMENT had no way to verify if the subcontracted motor carriers were safe or not. PENSKE TRANSPORTATION MANAGEMENT knew or should have known that, despite subcontracting these shipments to other motor carriers, LIBERTY LANE remained the statutory employer of the drivers, and responsible for ensuring that the drivers were properly trained, supervised and in compliance with the Federal Motor Carrier Safety Regulations and the standard of reasonable care in the operation

of the commercial motor vehicles being used to transport these subcontracted shipments. Yet PENSKE TRANSPORTATION MANAGEMENT failed to exercise reasonable care to investigate what, if anything, LIBERTY LANE did to discharge its obligations as the statutory employer of the drivers on these subcontracted shipments. Had PENSKE TRANSPORTATION MANAGEMENT exercised ordinary care by conducting a reasonable investigation, including by making inquiry of LIBERTY LANE, it would have learned that LIBERTY LANE did virtually nothing — and certainly did not exercise reasonable care — to vet, investigate, train or supervise its statutory employee drivers on these subcontracted shipments. And, having leaned these facts, a reasonably prudent transportation broker under the same or similar circumstances would not have selected LIBERTY LANE to transport the shipment giving rise to this case.

    4.04    In sum, a reasonably prudent transportation property broker would have learned prior to selecting LIBERTY LANE to transport the shipment that SATNAM SINGH LEHAL was in route to pick up at the time of the crash that: (i) LIBERTY LANE was using subcontracted motor carriers that had not been vetted for safe operations; (ii) did not have sufficient equipment, nor drivers, nor adequate safety management controls to ensure that it had competent, safe drivers providing transportation under its operating authority; and therefore a reasonably prudent transportation property broker would not have hired LIBERTY LANE to transport property in interstate commerce, including the load that SATNAM SINGH LEHAL was en route to pick up at the time of the crash.

4.05    Plaintiffs were damaged as a result of PENSKE TRANSPORTATION MANAGEMENT'S incompetence, and negligence in investigating LIBERTY LANE'S competence and capacity to transport goods in a commercial motor vehicle on the public roadways and in selecting LIBERTY LANE to transport goods in a commercial motor vehicle on the public roadways, because had PENSKE TRANSPORTATION MANAGEMENT exercised ordinary care in investigating LIBERTY LANE, it would have learned that LIBERTY LANE was not competent to safely transport goods in a commercial motor vehicle on the public roadways. The negligence of PENSKE TRANSPORTATION MANAGEMENT in investigating, selecting, and hiring LIBERTY LANE to transport property in commercial motor vehicles on the public highways was a proximate cause of the crash in which LYNDON DEAN MEYER was killed.

5.00    **DAMAGES**

5.01    As a result of the death of LYNDON DEAN MEYER, which was proximately caused by the tortious conduct of defendants as outlined above, D.J.M., surviving child of LYNDON DEAN MEYER, has suffered, and will in the future continue to suffer, pecuniary loss from the death of his father, including losses of care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value that he would, in reasonable probability, have received from his father had he lived. He has suffered, and will in the future continue to suffer, additional losses by virtue of the destruction of the parent-child relationship, including loss of the positive benefits flowing from the love, affection, solace, comfort, companionship, society, emotional support, and happiness that he would have received from his father had he lived. He has suffered severe

14

mental depression and anguish, emotional pain, torment, suffering, grief and sorrow as a result of the death of his father, LYNDON DEAN MEYER, and is likely to continue to suffer same for a long time in the future. For these losses, Mike Crane, as Guardian of the Estate of Minor D.J.M., seeks damages in a sum in excess of the minimum jurisdictional limits of this court. D.J.M. has also suffered a loss of inheritance.

5.02    For all of the foregoing losses, pursuant to the Texas Wrongful Death Act, Mike Crane, as Guardian of the Estate of Minor D.J.M, seeks damages in a sum in excess of the minimum jurisdictional limits of the court.

5.03    As a result of the death of LYNDON DEAN MEYER, which was proximately caused by the tortious conduct of defendants as outlined above, LAVON BETH MEYER AND LEE ALLEN MEYER, surviving parents of LYNDON DEAN MEYER, have suffered, and will in the future continue to suffer, pecuniary loss from the death of their son, including losses of care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value that they would, in reasonable probability, have received from their son had he lived. LAVON BETH MEYER AND LEE ALLEN MEYER have suffered, and will in the future continue to suffer, additional losses by virtue of the destruction of the parent-child relationship, including loss of the positive benefits flowing from the love, affection, solace, comfort, companionship, society, emotional support, and happiness that they would have received from their son had he lived. They have suffered severe mental depression and anguish, emotional pain, torment, suffering, grief, and sorrow as a result of the death of their son LYNDON DEAN MEYER and are likely to continue to suffer same for a long time in the future. For all of the foregoing losses, pursuant to the Texas Wrongful Death Act, LAVON BETH MEYER AND LEE ALLEN MEYER seek damages in a

sum in excess of the minimum jurisdictional limits of the court.

5.04    LYNDON DEAN MEYER was wrongfully and negligently killed as hereinbefore described but did not die instantly. He experienced conscious pain and suffering and severe mental anguish before his death, for which he would have been entitled to recover damages. This conscious pain and suffering included pre-collision mental anguish and terror of the impending collision and post-collision physical pain, suffering and mental anguish as a result of his injuries sustained in the collision. The cause of action for damages of conscious pain and suffering prior to his death and for funeral and medical expenses survives, and on his death accrued to his heirs at law under section 71.021 of the Civil Practices and Remedies Code. This claim is brought by the Plaintiff LEE ALLEN MEYER as executor of the estate.

6.00    **PRAYER**

6.01    WHEREFORE, Plaintiffs pray that the Defendants be duly cited to appear and answer herein; that upon a final trial of this cause, Plaintiffs will recover:

1. Judgment against Defendants, jointly and severally, for Plaintiffs' damages as set forth above, in an amount in excess of the minimum jurisdictional limits of this Court;

2. Interest on said judgment at the legal rate from date of judgment;

3. Prejudgment and post-judgment interest as allowed by law;

4. Costs of Court; and

5. Such other and further relief to which Plaintiffs may be entitled.

Respectfully submitted,

**Cole, Cole, Easley & Sciba P.C.**
302 West Forrest Street
Victoria, Texas 77901
Phone:		(361) 575-0551
Fax:	(361) 575-0986
Email: jcole@colefirmservice.com

**THE PENN LAW FIRM**
Eric T. Penn
State Bar No. 24029767
Federal ID number: 437829
102 S. Ragsdale Street
P.O. Box 2079
Jacksonville, Texas 75766
Telephone: 903-586-7600
Facsimile: 903-586-7676
eric@thepennlawfirm.com

BY:	/s/
ERIC T. PENN

**ATTORNEYS FOR THE PLAINTIFFS**


**PLAINTIFFS HEREBY RESPECTFULLY DEMAND A TRIAL BY JURY.**

**CERTIFICATE OF SERVICE**

 I hereby certify that a true and correct copy of the foregoing document was forwarded in accordance with the Federal Rules of Civil Procedure on this the 17th day of October, 2024, to all parties that have previously made an appearance through their attorneys of records and will be served on the new parties added herein.

/s/<br>
ERIC T. PENN